UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 20-201-DLB

JOSEPH DANIEL FOX                                                                              PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

KILOLO KIJAKAZI
ACTING COMMISSIONER OF SOCIAL SECURITY                           DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

I.    **INTRODUCTION**

This matter is before the Court on Plaintiff Joseph Fox's Motion for Summary Judgment (Doc. # 19), filed under 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration ("SSA"). Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] filed a Cross-Motion for Summary Judgment (Doc. # 21), and Plaintiff filed a Response (Doc. # 22). The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Joseph Fox is a 28-year-old resident of Perry County, Kentucky who lives with his family. (Tr. 173). In June 2018, Mr. Fox applied for Supplemental Security

---

[1] During the pendency of this lawsuit, Dr. Kilolo Kijakazi replaced Andrew Saul as Acting Commissioner of the Social Security Administration. Mr. Saul, as former Commissioner, was named in the original Complaint (Doc. # 1) of this lawsuit, but the Social Security Administration as an entity remains the official defendant, and so the Court has substituted the current Acting Commissioner's name in the case caption.

1

Income ("SSI") from the Social Security Administration. (*Id.*). During the application process, Mr. Fox's mother told an SSA interviewer that Mr. Fox is unable to talk on the telephone, sleeps many hours every day, and sometimes leaves his family's home without telling his family where he goes. (Tr. 187). Mr. Fox stated on his application that he suffers from generalized anxiety and depression (Tr. 188) and his mother also stated that in 2018, Mr. Fox was awaiting "profile testing results" for autism spectrum disorder. (Tr. 195). In August 2018, the SSA initially denied Mr. Fox's claim for SSI based on a lack of eligible disability. (Tr. 101-104). Mr. Fox asked the SSA to reconsider its decision, and in April 2019, his reconsideration request was denied. (Tr. 109). Mr. Fox then requested a hearing before an Administrative Law Judge ("ALJ"), and the SSA held that hearing in March 2020. (Tr. 15). At the hearing, Mr. Fox stated that his disability was based in seizures, depression, and anxiety. (Tr. 36). In April 2020, the SSA notified Mr. Fox that the ALJ's decision was unfavorable, as the ALJ also found that Mr. Fox was not necessarily disabled for SSA purposes. (Tr. 13). Shortly thereafter, Mr. Fox filed a formal appeal with the SSA, and in September 2020, the SSA Appeals Council notified him that they would uphold the ALJ's decision. (Tr. 1). As a last step of appeal, Mr. Fox filed this action seeking the Court's review of the SSA's determination of his disability status.

### III. ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B. The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520).

3

The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, the ALJ decided that Mr. Fox "has not been under a disability within the meaning of the Social Security Act" since the date that he submitted his application. (Tr. 15). More specifically, the ALJ found that while Mr. Fox has not engaged in gainful activity and has severe impairments, those impairments do not equal the severity of one of the listed impairments in the Social Security Act's associated regulations. (Tr. 17-18). From there, the ALJ concluded that Mr. Fox can perform work with certain limitations, and that there are jobs that exist in significant numbers in the national economy that Mr. Fox can hold, such as dishwasher, hand packer, or janitor. (Tr. 23-28). Because of those conclusions, the ALJ determined that Mr. Fox was not disabled for purposes of his application for SSI.

**C.   Review**

Here, Mr. Fox argues (1) that the ALJ's decision was not supported by substantial evidence; (2) that the ALJ failed to give "controlling weight" to the opinions of Mr. Fox's treating mental health provider; and (3) that the SSA's holding of the ALJ hearing by telephone inhibited the ALJ's ability to make credibility determinations that affected the outcome of the case. (Doc. # 19-1 at 1 and 2). Unfortunately for Mr. Fox, each of these arguments fail, for the reasons stated herein.

4

1. ***The ALJ's decision was supported by substantial evidence.***

As previously stated, "substantial evidence" " is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip, 25 F.3d at 286. The Court cannot weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different manner. *See Her*, 203 F.3d at 389-90.

During the hearing, Mr. Fox had a difficult time speaking to the ALJ, needing to be coached by his counsel at several different points as to how to effectively answer the questions being asked of him. (Tr. 36-44). But Mr. Fox nonetheless attested to the ALJ that his application was based on disability stemming from seizures, anxiety, and depression (Tr. 39), which are categorized in SSI regulations as "Depressive, Bipolar, and Related Disorders" and "Intellectual Disorder." (Tr. 18) (internal citations omitted). As the ALJ explained, with respect to the third part of the disability determination, which refers to the List of Impairments, mental impairments must result in "at least one extreme or two marked limitations in . . . understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing themselves" to satisfy the third part of the test. (Tr. 18).

From there, the ALJ found that after evaluating medical records from Kentucky River Community Care (Tr. 18), results from a WAIS-IV psychological assessment and IQ test (Tr. 18-19), reports from an ordered psychological evaluation by Jody Blackburn (Tr. 19-20), and records from follow up medical visits from varying providers (Tr. 19-20), Mr. Fox's impairments were not in line with the List of Impairments. More specifically, the

5

ALJ wrote that Mr. Fox only had "moderate limitations" with respect to each of the sub-categories for finding disability based on mental impairments. (Tr. 20-21). Furthermore, the ALJ found that Mr. Fox's residual functional capacity provides him with the ability to do certain work with limitations due to his seizures and somewhat limited cognitive abilities. (Tr. 23).

The ALJ's findings were based on the various reports of medical professionals, including the report of Jody Blackburn, who was hired by the Commonwealth of Kentucky to make a determination as to Mr. Fox's disability. (Tr. 315). Ms. Blackburn's evaluation of Mr. Fox revealed that while Mr. Fox lives with his parents, that he was able to complete "daily grooming needs without assistance" and that he was "able to do household chores like 'laundry, take out garbage, and yard work.'" (Tr. 317). Additionally, while the IQ testing completed by Mr. Fox yielded low average scores in some areas, some of his scores were in the average range, which was not sufficient to warrant "marked" or "extreme" designations of mental impairment. (Tr. 22-23).

Mr. Fox argues that "the ALJ ignores or misstates other evidence," in that the ALJ's written opinion did not refer to a neurologist's report, seemed to misstate the opinions of Reese Dehm, and "ignored" a statement by Mr. Fox's high school teacher. (Doc. # 22) at 3). While the ALJ did not refer to the neurologist's report, upon the Court's review of the report, it seems that it would not have tipped the scale in Mr. Fox's favor. While Mr. Fox is correct that Dr. Fakhoury, the neurologist, referred to test results as being "suggestive of cerebral dysfunction" (Doc. # 22 at 3), the dysfunction was referred to as "mild" and "therefore suggestive of . . . symptomatic partial epilepsy." (Tr. 553). Doing little more than affirmatively diagnosing Mr. Fox's epilepsy, which was addressed at

6

length in the ALJ's written opinion as a potential limitation on Mr. Fox's ability to work, but not a disqualifier (Tr. 25), the report is unfortunately not the smoking gun that Plaintiff portrays it to be.

With respect to the report by Reese Dehm, Mr. Fox points out that Dehm noted that he was "unable to follow directions to nearby places," and that he experiences "limitations where many areas of adaptive functioning is concerned." (Doc. # 22 at 3 and Tr. 312). However, Dehm's report, as used by the ALJ, also noted that "his abstract reasoning is intact," and that "he has adequate judgment," in addition to reporting average results on several areas of IQ testing. (Tr. 309). Furthermore, as the ALJ noted, Dehm's report was written in April 2018, and in subsequent reports from healthcare providers in late 2018 and into 2019 and 2020, Mr. Fox had stopped taking many of his medications and demonstrated "low aggression, fair attention, insight, and judgment" on a mental examination. (Tr. 20).

In sum, the ALJ in this case had sufficient and significant evidence to support a finding of no disability with respect to Mr. Fox, and thus, the Commissioner's findings will be upheld on this point.

> **2.   *The ALJ was not required to give "controlling weight" to any single medical opinion, and appropriately weighed all of the evidence in the case.***

Mr. Fox has also argued that the ALJ incorrectly found the medical findings of Stephanie Strand to be unpersuasive, as they were "inconsistent with other medical evidence of record and testimony," including the reports of Ms. Blackburn and Reese Dehm. Ms. Strand appears to be Mr. Fox's treating Mental Health Nurse Practitioner at Kentucky River Community Care, and she filled out a form in April 2019 that Mr. Fox had

7

extreme difficulties completing a litany of tasks. (Tr. 380-81). However, as the ALJ wrote, Ms. Strand's findings are in direct contrast to those of Reese Dehm and Ms. Blackburn. (Tr. 27). Additionally, the SSA form provided to Ms. Strand clearly stated, in capital letters:

> IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY REDUCTION IN CAPACITY; THE USEFULNESS OF YOUR OPINION DEPENDS ON THE EXTENT TO WHICH YOU DO THIS.

(Tr. 380). The form provided further directions, instructing the healthcare provider that "for each activity shown below, describe your patient's ability," and Ms. Strand merely checked the boxes for each activity, failing to provide any additional information and failing to describe Mr. Fox's ability in any detail at all. (Tr. 379-381). Given the admonition provided on the form, that failure to follow the directions would impact the usefulness of Ms. Strand's opinions, it cannot be surprising to Mr. Fox that the ALJ did not find Ms. Strand's opinions to weigh against nearly every other professional opinion in the case.

Lastly, while Mr. Fox also posits that the ALJ did not correctly afford "controlling weight" to Ms. Strand's report, the Social Security Administration has amended its regulations and has done away with the "controlling weight" rule for all claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5868 (to be codified at 20 C.F.R. § 404.1520c) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from your medical sources."). Instead, updated regulations require ALJs to evaluate medical findings using five enumerated factors, including supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c. Here, the ALJ did just that – instead of applying controlling weight to any one opinion, he considered all of them

together, weighing their sufficiency and reliability in making his determination. (Tr. 18-27).

### 3. *The telephonic nature of the hearing did not prejudice Mr. Fox in any way and is insufficient to overturn the ALJ's findings.*

Lastly, Mr. Fox also argues that the ALJ's holding of the hearing via telephone was prejudicial to him, as the ALJ "was unable to evaluate [Mr. Fox's] full level of functioning." (Doc. # 22 at 3). However, telephonic hearings have been held in courts across the country, in both state and federal systems, since the beginning of the COVID-19 pandemic. To the extent that Mr. Fox believes that the ALJ should have made a finding on the ALJ's own perception of Mr. Fox instead of the medical evidence presented to him, the Court points out the significant evidence previously noted in this Order.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   The decision of the Commissioner is supported by substantial evidence and is **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 19) is **DENIED**;

(3)   The Commissioner's Motion for Summary Judgment is **GRANTED**;

(4)   This action is **DISMISSED** and **STRICKEN** from the Court's docket; and

(5)   A **Judgment** will be entered contemporaneously herewith.

This 28th day of January, 2022.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\SocialSecurity\MOOs\London\20-201 Fox MOO.docx